UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH B. WILSON,<br><br>                    Plaintiff,<br><br>          - against -<br><br>MERCURY CASUALTY COMPANY, DONNA<br>AFRMANN, SUZANNE CHAPMAN, VITO<br>NETTIS,<br><br>                    Defendants. | No. 1:18 Civ. 11014 (AT)(OTW) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY LITIGATION

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................................. 1

III. THE COURT SHOULD COMPEL ARBITRATION OF WILSON'S CLAIMS
     AND STAY THE LITIGATION. ........................................................................... 2

     A.   The FAA Governs The Arbitration Agreement. ...................................... 2

     B.   The Arbitration Agreement Is Valid And Enforceable Under The FAA .............. 3

     C.   Wilson Must Arbitrate His Employment Dispute. .................................... 5

IV.  CONCLUSION ....................................................................................................... 6

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Allied-Bruce Terminex Co. v. Dobson*,
   513 U.S. 265 (1995)............................................................................................2, 3

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)...............................................................................................3

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001)............................................................................................3, 4

*CompuCredit Corp. v. Greenwood*,
   565 U.S. 95 (2012)................................................................................................3

*Dixon v. NBCUniversal Media, LLC*,
   947 F.Supp.2d 390 (S.D.N.Y. 2013).....................................................................4

*Doctor's Assocs., Inc. v. Hamilton*,
   150 F.3d 157 (2d Cir. 1998)..................................................................................5

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995)..............................................................................................5

*Genesco, Inc. v. T. Kakiuchi & Co.*,
   815 F.2d 840 (2d Cir. 1987)..................................................................................5

*Guyden v. Aetna, Inc.*,
   544 F.3d 376 (2d Cir. 2008)..................................................................................5

*Kindred Nursing Ctrs. L.P. v. Clark*,
   137 S. Ct. 1421 (2017)..........................................................................................4

*Marmet Health Care Ctr., Inc. v. Brown*,
   565 U.S. 530 (2012)..............................................................................................4

*Mehler v. Terminix Int'l Co.*,
   205 F.3d 44 (2d Cir. 2000)....................................................................................5

*Nitro-Lift Techs., L.L.C. v. Howard*,
   568 U.S. 17 (2012)................................................................................................6

*Oldroyd v. Elmira Sav. Bank, FSB*,
   134 F.3d 72 (2d Cir. 1998)....................................................................................5

i

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Patterson v. Raymours Furniture Co.*,
    96 F.Supp.3d 71 (S.D.N.Y. 2015) .........................................................................4

*PricewaterhouseCoopers L.L.P. v. Rutlen*,
    284 A.D.2d 200 (1st Dep't 2001) ........................................................................5

*Salzano v. Lace Entm't Inc.*,
    No. 13 Civ. 5600(LGS), 2014 WL 3583195 (S.D.N.Y. July 18, 2014) ...................4

*Teah v. Macy's Inc.*,
    No. 11-CV-1356(CBA)(MDG), 2011 U.S. Dist. LEXIS 149274 (E.D.N.Y.
    Dec. 29, 2011).......................................................................................................6

**Statutes**

9 U.S.C. § 1 *et seq.*................................................................................................1, 2, 3, 5

9 U.S.C. § 2 ..................................................................................................................2, 3

29 U.S.C. § 201 *et seq.*...................................................................................................2

29 U.S.C. § 215(a)(3)....................................................................................................2, 4

N.Y. Lab. L. § 190 *et seq.* ..............................................................................................2

N.Y. Lab. L. § 215 ........................................................................................................2, 4

N.Y. Lab. L. § 650 *et seq.*,.............................................................................................2

**Other Authorities**

U.S. Const. art. I, sec. 8, cl. 3 .......................................................................................2

## I.     <u>INTRODUCTION</u>

Defendants move to compel arbitration and stay this litigation pursuant to the Federal

Arbitration Act, 9 U.S.C. § 1 *et seq* (the "FAA").

Plaintiff Keith Wilson ("Wilson") is a former employee of Mercury Insurance Services,

LLC who was laid off in April 2016.  In June 2016, Wilson entered into a Confidential

Separation Agreement and General Release (the "Separation Agreement") that included, among

other things, a release of all claims and an agreement to arbitrate any disputes regarding Wilson's

employment or the validity or terms of the Separation Agreement.

Notwithstanding the release and the agreement to arbitrate disputes, Wilson filed this suit

asserting claims regarding his employment, all of which are governed by Wilson's agreement to

arbitrate any disputes regarding his employment or the validity of the Separation Agreement.

Accordingly, Defendants respectfully request that the Court grant their motion to compel

arbitration and stay this litigation in accordance with the FAA.

## II.    <u>FACTUAL BACKGROUND</u>

On April 29, 2016, Wilson was laid off from Mercury as part of a reduction in force.

(Declaration of Heidi Sullivan ("Sullivan Decl.") ¶ 5.)[1]  Mercury offered Wilson $31,174.66 in

severance and continued insurance benefits in return for a release of claims as set forth in the

Separation Agreement.  (Sullivan Decl. ¶ 6, Ex. A.)

Mercury provided Wilson 45 days to decide whether to execute the Separation

Agreement and also advised Wilson to consult with an attorney before signing the agreement.

(Sullivan Decl. ¶ 6.)  In addition, Mercury provided Wilson 7 days to revoke the Separation

---

[1] Mercury Insurance Services, LLC is the employer of all employees who provide services to
Mercury Casualty Company and its affiliated companies (collectively, "Mercury") and was
Wilson's employer.  (Sullivan Decl. ¶ 3.)

Agreement after signing it.  (Sullivan Decl. ¶ 6.)  Wilson signed the Separation Agreement on June 2, 2016, and never revoked the agreement.  (Sullivan Decl. ¶ 6.)

The Separation Agreement has an arbitration clause that covers any dispute regarding "any aspects of Employee's employment with the Company" or any dispute "regarding the validity or terms of this Agreement" (the "Arbitration Agreement").  (Sullivan Decl., Ex. A at ¶ 12.)  The Arbitration Agreement also expressly provides that such disputes "shall be resolved by an arbitrator selected in accordance with the employment arbitration rules of the Judicial Arbitration and Mediation Services ('JAMS'), or such other arbitration service to which Employee and Company agree, as the exclusive remedy for any such dispute, and in lieu of any court action, which is hereby waived."  (Sullivan Decl., Ex. A at ¶ 12.)  The Arbitration Agreement specifically states that "[t]he only exception to this promise to arbitrate is a claim by either party for injunctive relief."  (Sullivan Decl., Ex. A at ¶ 12.)

Wilson signed the Separation Agreement, accepted and retained the severance payment, and now, more than two and a half years later, has brought suit asserting violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* and 29 U.S.C. §215(a)(3) ("FLSA") and the New York Labor Law Article 19, §§ 650 *et seq.*, Article 6, §§ 190 *et seq.*, and § 215 ("NYLL"). (Affirmation of Marc E. Bernstein ("Bernstein Aff."), Ex. A ("Compl.") at ¶¶ 53–89.)

## III.   THE COURT SHOULD COMPEL ARBITRATION OF WILSON'S CLAIMS AND STAY THE LITIGATION.

### A.   The FAA Governs The Arbitration Agreement.

The FAA applies to all written contracts "evidencing a transaction involving [interstate] commerce."  9 U.S.C. § 2; *see also Allied-Bruce Terminex Co. v. Dobson*, 513 U.S. 265, 274 (1995).  The "involving interstate commerce" standard stretches to the limits of congressional power created by the Commerce Clause of the United States Constitution.  *See Allied-Bruce*, 513

U.S. at 274.  This standard only requires "that the transaction in fact involv[e] interstate commerce, even if the parties did not contemplate an interstate commerce connection."  *Id*.

Wilson's employment with Mercury undeniably involved interstate commerce.  Mercury is a California-based company and maintains its corporate headquarters in Brea, California. (Sullivan Decl. ¶ 2.)  It also has employees and/or offices in Arizona, Georgia, Illinois, Nevada, New Jersey, New York, Oklahoma, Texas, and Virginia.  (Sullivan Decl. ¶ 2.)  From 2004 through March 2013, Wilson was assigned to a Mercury office in New York, performing his job duties in New York on behalf of Mercury's customers in New York, while regularly interacting with other Mercury employees in New Jersey and Florida.  (Compl. ¶ 36; Sullivan Decl. ¶ 4.)  In March 2013, Mercury closed its New York office, and Wilson was thereafter assigned to Mercury's New Jersey office, where he performed his job duties in connection with insurance claims in both New York and New Jersey.  (Compl. ¶ 37; Sullivan Decl. ¶ 4.)  From 2013 until his layoff in 2016, Wilson primarily worked from his home in New York, reported to his supervisor in New Jersey, and travelled to Mercury's New Jersey office for meetings.  (Compl. ¶ 37; Sullivan Decl. ¶ 5.)  Consequently, because the employment relationship "involved interstate commerce," his claims arising out of his employment are subject to the FAA.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113 (2001).

   **B.     The Arbitration Agreement Is Valid And Enforceable Under The FAA.**

The FAA declares that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA codifies the "'liberal federal policy favoring arbitration agreements.'"  *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (citations omitted). Moreover, it requires courts to enforce arbitration agreements according to their terms.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("The 'principal purpose' of the FAA is

to 'ensur[e] that private arbitration agreements are enforced according to their terms.") (quoting *Volt Info. Sciences, Inc. v. Bd. Of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)); *see also Kindred Nursing Ctrs. L.P. v. Clark,* 137 S. Ct. 1421, 1428 (2017) ("The Act, to be sure, requires a State to enforce all arbitration agreements (save on generally applicable grounds) once they have come into being"); *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532–33 (2012) (unanimously and summarily reversing the West Virginia Supreme Court, which held that "as a matter of public policy under West Virginia law," the arbitration agreement could not reach personal-injury or wrongful death claims arising from nursing homes; "The FAA provides that a 'written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'") (quoting 9 U.S.C. § 2).

This policy favoring arbitration applies with full force in the employment context. *See Circuit City Stores, Inc.*, 532 U.S. at 123 ("We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context. Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation . . . .") (citation omitted). Indeed, the courts repeatedly have held that the precise claims asserted by Wilson are subject to mandatory arbitration. *E.g.*, *Patterson v. Raymours Furniture Co.*, 96 F.Supp.3d 71, 73–74 (S.D.N.Y. 2015) (ordering arbitration of FLSA and NYLL claims); *Salzano v. Lace Entm't Inc.*, No. 13 Civ. 5600(LGS), 2014 WL 3583195, at*1 (S.D.N.Y. July 18, 2014) (same); *Dixon v. NBCUniversal Media, LLC*, 947 F.Supp.2d 390, 393 (S.D.N.Y. 2013) (same).

Furthermore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)); *see also PricewaterhouseCoopers L.L.P. v. Rutlen*, 284 A.D.2d 200, 200 (1st Dep't 2001) ("Even if the arbitration provision were ambiguous in scope, in view of the circumstance that its construction is governed by the [FAA], which strongly favors arbitration, any ambiguities as to the scope of the provision would be properly resolved in favor of arbitration[.]") (citations omitted). Likewise, "[a]ny analysis of a party's challenge to the enforcement of an arbitration agreement must begin by recognizing the FAA's strong policy in favor of rigorously enforcing arbitration agreements." *Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 162 (2d Cir. 1998) (citing *Perry v. Thomas*, 482 U.S. 483, 490 (1987)).

### C.       Wilson Must Arbitrate His Employment Dispute.

The courts consider two issues in determining whether to compel arbitration: (1) whether a valid agreement to arbitrate exists under the relevant state law; and (2) whether the claims at issue fall within the scope of the arbitration agreement. *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 47 (2d Cir. 2000); *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75 (2d Cir. 1998); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987). In determining whether there is a valid agreement, courts look to the "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In the instant case, each of these threshold questions can be readily answered in the affirmative.

First, the Arbitration Agreement clearly is a valid agreement. Mercury offered valid consideration for the Separation Agreement, provided Wilson 45 days to decide whether to execute the Separation Agreement, and also advised Wilson to consult with an attorney before signing the agreement. (Sullivan Decl. ¶ 6.) In addition, Mercury provided Wilson 7 days to

5

revoke the Separation Agreement after signing it.  (Sullivan Decl. ¶ 6.)  Wilson signed the

Separation Agreement on June 2, 2016 and never revoked the agreement.  (Sullivan Decl. ¶ 6.)

Second, Wilson's claims clearly are disputes regarding "Employee's employment with

the Company."  (Sullivan Decl., Ex. A at ¶ 12.)  *E.g.*, *Teah v. Macy's Inc.*, No. 11-CV-

1356(CBA)(MDG), 2011 U.S. Dist. LEXIS 149274, at *20 (E.D.N.Y. Dec. 29, 2011) (plaintiff's

claims fell within the scope of the arbitration agreement where agreement stated that it applied to

"'all employment-related legal disputes,' including those 'arising under federal, state or local

decisional or statutory law'").  Indeed, even if -- after signing the Separation Agreement, not

revoking the Separation Agreement, not repudiating the Separation Agreement, and accepting

and retaining the payments made under the Separation Agreement for nearly <u>three years</u> --

Wilson were to now challenge the validity of the Separation Agreement, that, too, would be a

matter for the arbitrator to decide because Wilson specifically agreed that the "validity or terms"

of the agreement are subject to arbitration.  (Sullivan Decl., Ex. A at ¶ 12.); *see Nitro-Lift Techs.,*

*L.L.C. v. Howard*, 568 U.S. 17, 21 (2012) (question of arbitrability is for the arbitrator to decide

rather than the court).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant

Defendants' motion to compel arbitration and stay this litigation pending the arbitration.

Dated: December 21, 2018
      New York, New York

                      PAUL HASTINGS LLP

By: _____

                      Marc E. Bernstein
                      Elizabeth Vanderlinde
                      200 Park Avenue
                      New York, New York 10166
                      (212) 318-6000
                      marcbernstein@paulhastings.com
                      elizabethvanderlinde@paulhastings.com

                      *Attorneys for Defendants*
                      MERCURY CASUALTY COMPANY, DONNA
                      GRIFFIN, f/k/a DONNA ARFMANN, SUZANNE
                      CHAPMAN, AND VITO NETTIS

## CERTIFICATE OF SERVICE

I, Elizabeth Vanderlinde, an attorney duly licensed to practice before the Courts of the State of

New York, hereby certify that on this date a copy of the foregoing **MEMORANDUM OF LAW**

**IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY**

**LITIGATION** has been served via electronic filing through the Court's CM/ECF System upon:

LAW OFFICES OF JOSEPHINE M. LUPIS
Josephine M. Lupis, Esq.
98 Cutter Mill Road, Suite 332
Great Neck, New York 11021
*Counsel for Plaintiff*
KEITH B. WILSON


Dated: December 21, 2018

_____
                Elizabeth Vanderlinde