# EXHIBIT A



## CONFIDENTIAL SEPARATION AGREEMENT AND GENERAL RELEASE

Mercury Insurance Services, LLC ("Company") and Keith Wilson ("Employee") hereby agree to end their employment relationship on the following basis:

1.   Employee was laid off from the Company on April 29, 2016 ("Release Date"). Employee will be paid his/her regular base salary/wages earned through the Release Date, and for any earned but unused vacation days and unused 2016 floating holiday time, on the Company's regular payday for the pay period in which the Release Date occurs. Employee represents that he/she has been and will be paid all wages that Employee believes he/she was owed, and if a non-exempt employee, that he/she has not worked any time that was not recorded and paid by the Company. In addition, Employee represents that he/she has returned to the Company all files, records, credit cards, keys, equipment, any assigned vehicle, and any other Company property or documents maintained by him/her for the Company's use or benefit.

2.   Employee represents that he/she is signing this Agreement voluntarily and with a full understanding of and agreement with its terms, for the purpose of receiving a special payment and benefits subsidy from the Company.

3.   In reliance on Employee's promises and releases in this Agreement, after the Company's receipt of the signed original of this Agreement and any assigned vehicle and other equipment without damage beyond normal wear and tear, the Company will provide Employee with the following special payment and benefits:

   a.   A special payment in the total amount of $31,174.66, less deductions ✓ required by law ("Separation Pay"); and

   b.   In the event that Employee elects to continue group medical, dental and/or vision coverage under the provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA") after April 30, 2016, when his/her regular employee coverage ends following the Separation Date, a payment on Employee's behalf equal to the difference between the COBRA premium and the portion of the active employee premium that was paid by Employee for the coverage selected (employee or employee + family) for a period of one (1) month or until he/she becomes covered under another group insurance plan, whichever occurs first ("Benefits Subsidy").

The Benefits Subsidy will commence when the first premium is due after the Effective Date (defined below). The Separation Pay will be paid to Employee in a single payment on or about the Company's first regular payday after the Effective Date, as long as Employee has not revoked his/her acceptance of this Agreement.

Page 1 of 4

Employee agrees that he/she is not entitled to receive, and will not claim, any right, benefit, or compensation other than what is expressly set forth in this Agreement, and hereby expressly waives any claim to any compensation, benefit, bonus or other payment which is not expressly referenced in this Agreement.

4. In exchange for the Separation Pay and Benefits Subsidy provided in Paragraph 3, Employee promises

      a. to keep this Agreement and its contents in complete confidence and not to disclose the fact or terms of this Agreement or the fact or amount of the Separation Pay and Benefits Subsidy to any person, including any past, present, or prospective employee of the Company, except as required by law.

      b. not to disparage the Company or its products, services, or management.

      c. not to use or disclose any confidential information, trade secrets, or financial, personnel, or client information which he/she learned while employed by the Company.

      d. for a period of twelve (12) months after this Agreement is signed, not to solicit or participate in or assist in any way in the solicitation of any Company employee to begin an employment or consulting relationship with any other employer by use of any Company trade secrets or proprietary information.

      e. for a period of twelve (12) months after this Agreement is signed, not to solicit or participate in or assist in any way in the solicitation of the customers of the Company to cease or decrease doing business with the Company or for the customers to begin doing business with any competitor of the Company by use of any Company trade secrets or proprietary information. This promise does not prevent Employee from going to work for a competitor of the Company as long as he/she does not violate any of his/her promises with respect to Company information, property and/or trade secrets.

5. Employee does hereby, for himself/herself and his/her heirs, successors and assigns who could bring a claim on his/her behalf, release, acquit and forever discharge the Company, and its officers, directors, managers, employees, representatives, related entities, successors, and assigns (the Released Parties), of and from any and all claims, actions, charges, complaints, causes of action, rights, demands, debts, damages, or accountings of whatever nature, known or unknown, which he/she or his/her heirs on his/her behalf may have against such persons or entities based on any actions or events which occurred prior to his/her Release Date, including but not limited to those related to, or arising from, Employee's employment with the Company or the ending thereof. This release includes any and all claims for violation of any law prohibiting discrimination, harassment or retaliation, for torts, and for breach of any express or implied contract or covenant. This release does not apply to Employee's right to receive the Separation Pay and Benefits Subsidy or to retirement

benefits that have vested and accrued prior to the Release Date, or prohibit employee from participating in the investigation of an administrative charge or complaint by a federal or state agency.

In exchange for material portions of the Severance Pay provided in Paragraph 3 and in accordance with the Older Workers Benefit Protection Act, Employee hereby knowingly and voluntarily waives and releases all rights and claims, known and unknown, arising under the Age Discrimination In Employment Act of 1967, as amended, which he/she might otherwise have had against any of the Released Parties based on any act or omission which occurred on or before the date this Agreement is signed by Employee.

6. It is further understood and agreed that as a condition of this Agreement, Employee is waiving any rights he/she might have under any law designed to protect the waiver of unknown claims, such as Section 1542 of the Civil Code of the State of California, which provides as follows: "A General Release does not extend to claims which a creditor does not know or suspect to exist in his or her favor at the time of executing the Release, which if known by him or her must have materially affected his or her settlement with the debtor."

7. In addition, it is agreed that as a condition of this Agreement, if Employee applies and is selected for any open position with the Company within 12 months of the Release Date, Employee shall repay the Company the full amount of the Separation Pay minus an amount equal to one week's base salary at the time of layoff (40 hours' pay for nonexempt employees). Employee will not be allowed to commence employment with the Company until repayment of the Separation Pay has been received by the Company.

8. Employee agrees not to assert that this Agreement is an admission of guilt or wrongdoing by any of the Released Parties and he/she acknowledges that the Released Parties deny that they have engaged in wrongdoing of any kind or nature

9. This Agreement contains all of the terms, promises, representations, and understandings made between the parties and supersedes any previous representations, understandings, or agreements, except for any agreement by Employee regarding confidentiality and/or protection of Company information, property, or trade secrets, which agreement(s) shall continue in full force and effect. This Agreement may not be changed or modified in any way, except in a writing signed by the Chief Executive Officer of the Company and Employee. Should any provision of this Agreement be declared or determined by any arbitrator or court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, terms, or provisions shall be deemed not to be a part of this Agreement.

10. Employee understands that he/she is waiving legal rights by signing this Agreement, and has consulted with an attorney and/or other persons to the full extent he/she wanted to do so before signing this Agreement.

11. Employee is hereby advised that he/she (a) may consult with an attorney prior to signing this Agreement, (b) has 45 days in which to consider and accept this Agreement by signing this Agreement, which should then be promptly returned to Amy Lindberg at the Company, and (c) is

being provided statistical data with this Agreement that relates to this employment termination program. In addition, Employee is advised that he/she has a period of 7 days following his/her signing of this Agreement in which he/she may revoke the Agreement. If Employee timely revokes this Agreement, he/she will not receive the Separation Pay and Benefits Subsidy under Paragraph 3. If Employee does not advise the Company (by a writing received by Amy Lindberg at the Company within such 7-day period) of his/her intent to revoke the Agreement, the Agreement will become effective and enforceable upon the expiration of the 7 days ("Effective Date").

12. This Agreement will be interpreted, enforced and governed by and under the laws of the State of New York. Any dispute regarding the validity or terms of this Agreement or any aspects of Employee's employment with the Company, including termination, or any other dispute between these parties shall be resolved by an arbitrator selected in accordance with the employment arbitration rules of the Judicial Arbitration and Mediation Services ("JAMS"), or such other arbitration service to which Employee and Company may agree, as the exclusive remedy for any such dispute, and in lieu of any court action, which is hereby waived. The only exception to this promise to arbitrate is a claim by either party for injunctive relief pending arbitration. The arbitration will be held in the city in which Employee last worked, unless the parties agree otherwise.

This Confidential Separation Agreement and General Release is signed this 2nd day of June, 2016.

"Employee"

_Keith Wilson_

"Company"

Mercury Insurance Services, LLC

By: _A. Lindberg_
Name: _Amy Lindberg_
Title: _Employee Relations Mgr._